IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAUL GARCIA,

      Plaintiff,

vs.                                    No. CIV 13-586 RB/SCY

PETER D. ROMERO,
In his individual and official capacities,
Shawn F. Casaus,
In his individual and official capacities,

      Defendants.

## MEMORANDUM OPINION AND ORDER

After Defendant Officer Peter D. Romero pulled over Plaintiff Paul Garcia for an alleged traffic violation, their conversation turned contentious and resulted in Plaintiff's arrest for driving while intoxicated. Plaintiff brought this action under 42 U.S.C. § 1983 and state tort law, alleging unlawful search and seizure, violation of Due Process, assault, battery, negligence, false imprisonment, and intentional infliction of emotional distress. (Compl., Doc. 1.) The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. Before the Court is Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ. J., Doc. 26.) Having considered the parties' submissions and arguments, the Court **GRANTS** the motion.

### I.     BACKGROUND

On September 20, 2012, Plaintiff Paul Garcia took the Rio Grande onramp onto Interstate 40 West in Albuquerque, NM. (Garcia Aff., Doc. 40-1.) Shortly thereafter, Albuquerque Police Department Officer Peter D. Romero also entered I-40 using the same onramp. (Pl.'s Ex. D, Doc. 40-3 at 2.) Plaintiff was acutely aware of the patrol car's presence. (Doc. 40-1.) Officer Romero allegedly saw Plaintiff's car drifting onto the white line and into the shoulder of the

highway. (Doc. 26; Doc. 40-3.) Turning on his emergency lights, he initiated a traffic stop based on the driver's failure to maintain his lane. (Doc. 26; Doc. 40.)

After pulling over and waiting for Officer Romero to approach the car, Plaintiff questioned the basis for the traffic stop and initially refused to produce his insurance and registration. (Doc. 26; Doc. 40.) Officer Romero allegedly smelled alcohol emanating from Plaintiff's person and ordered him to exit the car. (Doc. 26.) Plaintiff maintains that he was not intoxicated and had not drunk any alcoholic beverages that day. (Doc. 40-1; Madrid-Garcia Aff., Doc. 40-2.)

Plaintiff refused to exit the vehicle and Officer Romero tried several tactics to get Plaintiff out of the car, including reaching into the car to open the door, pulling on the Plaintiff, threatening the Plaintiff, and ultimately calling for back-up. (Romero Aff., Doc. 26-1 at 2-5; Doc. 40.) When a second officer, Officer Shawn Casaus, arrived on the scene, Plaintiff stepped out of his vehicle. (Doc. 40-1) Plaintiff refused, however, to take a field sobriety test. (Doc. 26; Doc. 40.)

Officer Romero arrested Plaintiff and took him to the Prisoner Transport Center for breathalyzer testing. (Doc. 40-3 at 10.) Subsequently Plaintiff was charged with failure to maintain his lane and driving while intoxicated ("DWI"); he was jailed for approximately 20 hours. (Doc. 26; Doc. 40-1; Doc. 40-3.) At his criminal trial, Plaintiff was acquitted of the DWI charge and pled "no contest" to the failure to maintain his traffic lane. (Doc. 40-1; Doc. 40-3.)

On June 24, 2013, Plaintiff filed his *pro se* Complaint against Officers Romero and Casaus, contending that they violated his Fourth and Fourteenth Amendment rights and state tort law. (Doc. 1.) Three months later, attorneys Ray Twohig and Nick Sitterly appeared as counsel for Plaintiff. (Doc. 13.) Counsel never moved to amend the *pro se* Complaint. The parties

agreed to dismiss all municipal claims and the suit against Officer Casaus. (Order, May 1, 2014, Doc. 31; Order, June 26, 2014, Doc. 44.) Invoking the doctrine of qualified immunity, Officer Romero now moves for summary judgment on the remaining claims. (Doc. 26.)

## II.     LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact "could return a verdict for the nonmoving party." *Id*. At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518. 559-60 (2006). If there is a genuine dispute of material fact, then the "facts must be viewed in the light most favorable to the nonmoving party . . . ." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

## III.    ANALYSIS

Defendant Romero premises his Motion for Summary Judgment on the doctrine of qualified immunity, arguing that even if his actions were considered unlawful, he is immune from suit. (Doc. 26.) "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). When considering qualified

immunity on summary judgment, "courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

To determine whether qualified immunity applies, courts consider two questions. *See Pearson*, 555 U.S. at 236 (explicating the two-prong inquiry for qualified immunity). First, did the defendant's actions violate the plaintiff's constitutional rights? *See id.* Second, was the complained-of constitutional violation "clearly established" such that a reasonable officer would have known that his conduct was unlawful? *See Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Plaintiff initially brought a bevy of claims, ranging from constitutional claims to a state negligence action. (Doc. 1.) In his Response to Defendant's Motion for Summary Judgment, Plaintiff states that the only "remaining viable claims" are for false arrest and malicious prosecution. (Doc. 40 at 1-2.) The Court construes this to mean that Plaintiff voluntarily abandons Counts II, III, IV, VII, VIII, and X against Defendant Romero. Further, Plaintiff's Response appears to waive Count IX, a state law false imprisonment claim, by offering no argument to support it. The Court now considers Counts I, V, and VI as claims for either false arrest or malicious prosecution under the Fourth and Fourteenth Amendments.

### A. Challenge to the Traffic Violation Stop

Plaintiff claims that Defendant Romero lacked reasonable suspicion to detain him for the traffic violation. A traffic stop is a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Without reasonable suspicion, a detention during a traffic stop violates the detainee's constitutional rights. *See United States v. Mosley*, 743 F.3d 1317, 1330 (10th Cir. 2014).

Defendant Romero avers that he had probable cause to make the stop after seeing Plaintiff's car driving on Interstate 40's white lane markers, in contravention of Albuquerque City Ordinance 8-2-1-42. (Doc. 26-1 at 2.) In opposition, Plaintiff does not expressly deny driving on the white line, but says the accusation is "unlikely to be true." (Doc. 40-1 at 3.) He states that he was "taking care not to weave" and "certainly did not cross over either of the lane markers." (Doc. 40-1 at 2.) Later he states that he "may have inadvertently crossed a white line during a turn." (Doc. 40-1 at 3.) Plaintiff does not point to any evidence other than his irresolute denial. At his criminal trial, Plaintiff pled "no contest" to the lane violation charge. (Doc. 26-2.)

Although the evidence must be viewed in the light most favorable to the nonmoving party, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252; *see also Macon v. United Parcel Service, Inc.*, 743 F.3d 708 (10th Cir. 2014) (quoting same). The plaintiff's waffling denial is insufficiently probative. The Court finds that Officer Romero had reasonable suspicion to stop Plaintiff's vehicle.

### B. Challenge to Arrest for Driving While Intoxicated

Plaintiff argues that the officers "at the time of the stop" did not have evidence that "could give rise to probable cause to arrest on charges of DWI." (Doc. 40.) Plaintiff presents this claim as malicious prosecution, but the argument and facts state a false arrest claim. Fourth Amendment claims for false arrest and malicious prosecution both stem from unlawful seizures of a person. The defining distinction between the two claims is the initiation of legal process. *See Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013). False arrests occur when a state actor makes an unreasonable seizure before getting a warrant or otherwise instituting formal legal proceedings. *See id.* In contrast, malicious prosecutions occur when the state actor makes

an unreasonable seizure buttressed by legal process. *See id.* Because most of Plaintiff's arguments and facts go to events "at the time of the stop" and before the initiation of legal proceedings, the Court will consider a claim for false arrest. An arrest made without probable cause violates the arrestee's constitutional rights. *See Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012).

Here, Plaintiff raises a genuine dispute over the material facts going to his DWI arrest. Defendant Romero states that Plaintiff smelled of alcohol, that his speech was slurred, and that his eyes were watery and bloodshot. (Doc. 26-1 at 2.) Questioning this account, Plaintiff repeatedly avers that he did not drink any alcohol on the day in question. (Doc. 40-1.) Plaintiff's wife similarly states that her husband was not drunk minutes before the traffic stop. (Doc. 40-2.) Finally, Plaintiff states that the videos of the traffic stop reveal that his eyes were neither bloodshot nor watery. (Doc. 40.) All this evidence supports Plaintiff's challenge to the DWI arrest. According to Plaintiff's theory of the incident, the officer arrested him for DWI purely in retaliation for Plaintiff's refusal to obey orders. (Doc. 40 at 11.)

Yet, to be considered a reasonable arrest for purposes of Section 1983, the officer must only have probable cause for *some* crime, not necessarily the crime the officer articulated at the time of arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004); *United States v. Turner*, 553 F.3d 1337, 1345 (10th Cir. 2009) ("[T]he probable cause inquiry is not restricted to a particular offense, but rather requires merely that officers had reason to believe that a crime—any crime—occurred."). Plaintiff raised a genuine dispute over the arrest for DWI, but not for the other possible charges arising out of the incident.

Officers may lawfully make arrests for misdemeanors committed in the presence of a police officer. *See Virginia v. Moore*, 553 U.S. 164, 173 (2008). Plaintiff does not dispute that

6

he was unable to provide current registration (Doc. 26-1 at 7; Doc. 40-3 at 15), unable to provide current proof of insurance (Doc. 26-1 at 7; Doc. 40-3 at 15), and repeatedly declined to obey an officer's reasonable orders by stepping out of the vehicle (Doc. 40-1 at 4). Based on the undisputed objective evidence, Officer Romero had probable cause that Plaintiff committed all the above misdemeanors in the officer's presence.  Furthermore, Plaintiff admits that he refused to submit to a field sobriety test.  (Doc. 40-1 at 4.)

Even if Defendant Romero arguably lacked probable cause for the DWI charge, the Court must still consider the second prong of the qualified immunity analysis: whether Plaintiff's "rights were clearly established, which we approach by asking whether the officers *arguably* had probable cause."  *See Kaufman*, 697 F.3d at 1300 ("As a practical matter, we implement this standard by asking whether there was 'arguable probable cause' for an arrest—if there was, a defendant is entitled to qualified immunity.").  The "clearly established" standard was created so that police officers could "reasonably anticipate when their conduct may give rise to liability for damages."  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).  The Court does not have to reach the constitutionality of the specific arrest in order to determine that, under the circumstances, the law was insufficiently clear.  *See Pearson*, 555 U.S. at 236 (granting courts the discretion to decide either prong of the qualified immunity test first).

The "clearly established" prong is not met here.  Plaintiff's Fourth Amendment rights were not violated by an alleged retaliatory arrest when that arrest was supported by probable cause.  Defendant Officer had probable cause for a host of misdemeanors.  Given the list of arguable misdemeanors, Plaintiff cannot show that Defendant Romero violated clearly established law by arresting him.  As a result, Defendant Romero is entitled to qualified immunity on this claim.

## C. Malicious Prosecution Claim

Plaintiff briefly states in his Response that Defendant Romero willfully manufactured evidence in charging documents and at trial, asserting a malicious prosecution claim under the Fourth Amendment. Defendant objects that Plaintiff did not include this claim in his Complaint. (Doc. 46 at 1-2.) Pertinent to a malicious prosecution claim, Plaintiff's Complaint does (1) challenge the seizure of his person, and (2) allege that the criminal action against him for the DWI charge terminated in his favor. (Doc. 1 at 8-9.) But Plaintiff's Complaint does not make a claim for malicious prosecution nor does it state sufficient facts to support such a claim.

Plaintiff filed his Complaint *pro se*. (Doc. 1.) Generally, courts liberally construe *pro se* complaints. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (quotations and citations omitted). Yet, at the time of this Order, Plaintiff has been represented by counsel for over eleven months. His counsel never sought to amend the Complaint. The policy underlying the Liberal Construction Doctrine does not apply here.

In his Response, Plaintiff and his counsel attempt to impliedly amend the Complaint by adding the claim for malicious prosecution. However, a party may not impliedly amend a complaint when the opposing party objects. *See Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1280 (10th Cir. 2004) (explaining conditions under which a party can amend a complaint during the course of litigation). Thus, the Court will not consider Plaintiff's claim for malicious prosecution under the Fourth Amendment.

Plaintiff makes a violation of due process claim under the Fourteenth Amendment which amounts to a malicious prosecution claim. Although raised in the Complaint, this claim cannot survive summary judgment. The Fourteenth Amendment protects individuals against

deprivations of liberty without due process of law. U.S. Const. amend. XIV, § 1. Adequate post-deprivation remedies, such as state tort claims, can satisfy due process requirements. *Myers*, 738 F.3d at 1193 (citing *Becker v. Kroll*, 494 F.3d 904, 921 (10th Cir. 2007)). New Mexico law does provide adequate post-deprivation remedies. *See Weststar Mortgage Corp. v. Jackson*, 2003-NMSC-002, 133 N.M. 114, 120-22, 61 P.3d 823, 829-31 (2002) (outlining the necessary elements for a malicious prosecution claim and an abuse of process claim under New Mexico law). Because procedural due process has been satisfied, Defendant Romero is entitled to summary judgment on this claim.

## IV. CONCLUSION

Based on his Response Brief, the Court deems Plaintiff to have waived Counts II - IV and VII - X. Additionally, the Court declines to consider Plaintiff's claim for malicious prosecution under the Fourth Amendment, raised for the first time in the Response Brief. The Court agrees that Defendant is entitled to qualified immunity for Plaintiff's claims for false arrest and violation of due process.

**THEREFORE**,

**IT IS ORDERED** that Defendant Peter D. Romero's Motion for Summary Judgment (Doc. 26) is **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**